IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOVEREIGN PEAK VENTURES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | JURY TRIAL DEMANDED |
| v. | § | |
| | § | |
| TCL TECHNOLOGY GROUP CORPORATION, | § | C.A. NO. _____ |
| TCL INDUSTRIES HOLDINGS CO., LTD., | § | |
| TCL ELECTRONICS HOLDINGS LTD., | § | |
| TCL COMMUNICATION TECHNOLOGY | § | |
| HOLDINGS LTD., | § | |
| HUIZHOU TCL MOBILE COMMUNICATION CO. | § | |
| LTD., | § | |
| TCT MOBILE WORLDWIDE LTD., | § | |
| TCT MOBILE INTERNATIONAL LTD., | § | |
| SHENZEN TCL NEW TECHNOLOGIES CO. LTD., | § | |
| TCL KING ELECTRICAL APPLIANCES | § | |
| (HUIZHOU) CO. LTD., | § | |
| TCL MOKA INTERNATIONAL LTD., and | § | |
| TCL MOKA MANUFACTURING S.A. DE C.V. | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sovereign Peak Ventures, LLC ("SPV") files this Complaint against Defendants

TCL Technology Group Corporation ("TCL Corp."), TCL Industries Holdings Co., Ltd. ("TCL

Industries"), TCL Electronics Holdings Ltd. ("TCL Electronics"), TCL Communication

Technology Holdings Ltd. ("TCL Communication"), Huizhou TCL Mobile Communication Co.

Ltd. ("Huizhou TCL"), TCT Mobile Worldwide Ltd. ("TCT Mobile Worldwide"), TCT Mobile

International Ltd. ("TCT Mobile Int'l"), Shenzhen TCL New Technologies Co. Ltd. ("TCL

Technology"), TCL King Electrical Appliances (Huizhou) Co. Ltd. ("TCL King"), TCL Moka

International Ltd. ("TCL Moka Int'l"), and TCL Moka Manufacturing S.A. de C.V. ("TCL Moka

Mfg.") (collectively TCL, TCL Industries, TCL Electronics, TCL Communication, Huizhou TCL,

TCT Mobile Worldwide, TCT Mobile Int'l, TCL Technology, TCL King, TCL Moka Int'l, and

TCL Moka Mfg. are referred to as "Defendants," "TCL Group," or "TCL") for infringement of

U.S. Patent No. 8,467,723 (the "'723 patent"), U.S. Patent No. 8,792,453 (the "'453 patent"), U.S.

Patent No. 8,902,871 (the "'871 patent"), U.S. Patent No. 9,357,441 (the "'441 patent"), and U.S.

Patent No. 10,039,144 (the "'144 patent"), collectively, the "Asserted Patents."

## <u>THE PARTIES</u>

1.      Sovereign Peak Ventures, LLC is a Texas limited liability company, with a

principal place of business in Plano, TX. SPV resides in this District.

2.      On information and belief, TCL Technology Group Corporation, formerly known

as TCL Corporation, is a corporation organized under the laws of the People's Republic of China

with a principal place of business in Huizhou City, Guangdong, P.R. China. TCL Corp. with TCL

Group induces its subsidiaries, affiliates, retail partners, and customers in the making, using,

selling, offering for sale, and/or importing throughout the United States, including within this

District, products, such as mobile phones and televisions, accused of infringement. TCL Corp. in

agency with the TCL Group provides a distribution channel of infringing products within this

District and the U.S. nationally.

3.      On information and belief, TCL Industries Holdings Co., Ltd. is a corporation

organized under the laws of the People's Republic of China with a principal place of business

located at 22/F, TCL Technology Building, 17 Huifeng 3rd Road, Huizhou, Guangdong, 516000

P.R. China. TCL Corp. holds a controlling interest in TCL Industries. TCL Industries with TCL

Group induces its subsidiaries, affiliates, retail partners, and customers in the making, using,

selling, offering for sale, and/or importing throughout the United States, including within this

District, products, such as mobile phones and televisions, accused of infringement. TCL Industries in agency with the TCL Group provides a distribution channel of infringing products within this District and the U.S. nationally.

4.     On information and belief, TCL Electronics Holdings Ltd., formerly known as TCL Multimedia Technology Holdings Ltd., is a corporation organized under the laws of the Cayman Islands with a registered address at P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. TCL Electronics has a principal place of business at 9 Floor, TCL Electronics Holdings Limited Building, TCL International E City, #1001 Zhongshan Park Road, Nanshan District, Shenzhen, Guangdong, 518067 P.R. China. TCL Electronics also has a location located at 7/F, TCL Building, 22 Science Park E, Hong Kong Science Park, Hong Kong. TCL has a controlling interest in TCL Electronics. TCL Electronics is a subsidiary of TCL Industries Holdings (Hong Kong) Co. Ltd., which is wholly-owned by TCL Industries. TCL Electronics operates in agency as part of the TCL Group. TCL Electronics operates its subsidiaries along with itself as the TCL Group. TCL Electronics with TCL Group, either itself and/or through the activities of its subsidiaries, makes, uses, sells, offers for sale, and/or imports throughout the United States, including within this District, products, such as mobile phones and televisions, accused of infringement.

5.     On information and belief, TCL Communication Technology Holdings Ltd. is a corporation organized under the laws of the People's Republic of China with a principal place of business in Shenzhen, Guangdong, P.R. China. TCL Communication is wholly owned by TCL Electronics. TCL Communication performs research and development in connection with the mobile phones accused of infringement in this Complaint and operates in concert with other

members of the TCL Group to manufacture and import mobile phones accused of infringement in this Complaint within this District.

6.     On information and belief, Huizhou TCL Mobile Communication Co. Ltd. is a company organized and existing under the laws of the People's Republic of China with a principal place of business at No. 86 Hechang Qi Lu Xi, Zhongkai Gaoxin District, Huizhou City, Guandong Province, P.R. China. Huizhou TCL is wholly owned by TCL Communication. Huizhou TCL regularly imports and inserts into the stream of commerce mobile phones and related goods, such that infringing mobile phones will be offered for sale and sold in this District. Huizhou TCL operates in agency as part of the TCL Group.

7.     On information and belief, TCT Mobile Worldwide Ltd. is a corporation organized under the laws of Hong Kong with a principal place of business at 5/F HK Science Park Bldg., Shatin, NT, Hong Kong. TCT Mobile Worldwide is wholly owned by TCL Communication. TCT Mobile Worldwide regularly imports and inserts into the stream of commerce mobile phones and components of mobile phones, such that infringing mobile phones will be offered for sale and sold in this District. TCT Mobile Worldwide operates in agency as part of the TCL Group.

8.     On information and belief, TCT Mobile International Ltd. is a corporation organized and existing under the laws of Hong Kong, with a principal place of business located at 1910-12A Tower 3, China Hong Kong City, 33 Canton Road, Tsim Sha Tsui, 31802888 Hong Kong. TCT Mobile Int'l is wholly owned by TCT Mobile Worldwide. TCT Mobile Int'l regularly imports and inserts into the stream of commerce mobile phones and components of mobile phones, such that infringing mobile phones will be offered for sale and sold in this District. TCT Mobile Int'l operates in agency as part of the TCL Group.

9.      On information and belief, Shenzhen TCL New Technologies Co. is a company organized and existing under the laws of the People's Republic of China with a principal place of business at 5 Shekou Industrial Avenue Shenzhen, 518067 P.R. China. TCL Technology is a subsidiary of TCL Electronics. TCL Technology performs research and development in connection with the televisions accused of infringement in this Complaint and operates in concert with other members of the TCL Group to manufacture and import televisions accused of infringement in this Complaint within this District.

10.     On information and belief, TCL King Electrical Appliances (Huizhou) Co. Ltd. is a company organized and existing under the laws of the People's Republic of China with a principal place of business at 78 Zhongkai Development Zone Huizhou, 516006, China. TCL King is a subsidiary of TCL Electronics. TCL King regularly imports and inserts into the stream of commerce televisions and related goods, such that infringing televisions will be offered for sale and sold in this District. TCL King operates in agency as part of the TCL Group.

11.     On information and belief, TCL Moka International Ltd. is a company organized and existing under the laws of the People's Republic of China with a principal place of business at 13/F, TCL Tower, 8 Tai Chung Road, Tsuen Wan, New Territories Hong Kong. TCL Moka Int'l is wholly-owned by TCL Electronics. TCL Moka Int'l regularly imports and inserts into the stream of commerce televisions and components of televisions, such that infringing televisions will be offered for sale and sold in this District. TCL Moka Int'l operates in agency as part of the TCL Group.

12.     On information and belief, TCL Moka Manufacturing S.A. de C.V. is a company organized under the laws of Mexico with a principal place of business at Calle 4ta. No. 55, Cd. Industrial Otay, Tijuana 22500, Mexico. TCL Moka Mfg. is wholly-owned by TCL Electronics.

TCL Moka Mfg. regularly imports and inserts into the stream of commerce televisions and components of televisions, such that infringing televisions will be offered for sale and sold in this District. TCL Moka Mfg. operates in agency as part of the TCL Group.

13.     On information and belief, Defendants are an interrelated group of companies, which collectively compromise one of the largest electronics manufacturers in the United States.

14.     The Asserted Patents were invented by employees of Panasonic Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. Panasonic made numerous innovations in the home appliance, battery, mobile phone, and television industries. Indeed, Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today. In 1991, Panasonic released the Mova P, the smallest and lightest mobile phone on the market, which revolutionized the industry by showing the demand for a compact, lightweight device. Panasonic also produced the first wide-format plasma display and developed the first digital television for the U.S. market. Panasonic's history of innovation is also borne out by its intellectual property. Indeed, a search of the USPTO database where the patent assignee is "Panasonic" yields over 27,000 matches.

15.     TCL was founded in the People's Republic of China in the early 1980s and continues as a partially state-owned enterprise of the Chinese government. TCL launched in North America in 2014 and portrays itself as "America's Fastest-Growing TV Brand." *See, e.g.*, https://tcl.com/eu/en/aboutTCL/the-group.html; https://www.tclusa.com/aboutus/our-story.

16.     Prior to the filing of the Complaint, SPV repeatedly attempted to engage TCL and/or its agents in licensing discussions related to the Asserted Patents, including but not limited to providing a non-discriminatory offer to license the portfolio on a worldwide basis, including both implementation and any standards-essential patents in the portfolio, that was reasonable for

a license taken in the absence of litigation.  TCL ignored these overtures. TCL's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of SPV's patented technologies without fair compensation to SPV.

17.     On information and belief, Defendants operate in agency with each other as a group. *See, e.g.*, https://tcl.com/eu/en/aboutTCL/thegroup.html ("The group has 75,000 employees, 28 Research and Development laboratories and 22 production sites."). TCL induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as mobile phones and televisions, accused of infringement. Defendants provide a distribution channel of infringing products within this District and the U.S. nationally. Defendants, between and amongst themselves, purposefully direct the Accused Products into established distribution channels within this District and the U.S. nationally.

18.     On information and belief, Defendants maintain a corporate presence in the United States via at least its, U.S.-based sales subsidiaries including, TTE Technology, Inc. and TCT Mobile (US) Inc. TTE Technology, Inc. is a Delaware corporation with a principal place of business at 1860 Compton Avenue, Corona, California 92881. TTE Technology, Inc. provides sales, distribution, research, and development support in North America as part of the TCL Group and for its parents, e.g., TCL Corp. TTE Technology, Inc. is an agent of Defendants. TCT Mobile (US) Inc. is a Delaware corporation with a principal place of business at 25 Edelman, Suite 200, Irvine, California 92618. TCT Mobile (US) Inc. provides sales, distribution, research, and development support in North America as part of the TCL Group and for its parents, e.g., TCL Corp. TCT Mobile (US) Inc. is an agent of Defendants. At the direction and control of Defendants,

U.S.-based sales subsidiaries including, TTE Technology, Inc. and TCT Mobile (US) Inc., import infringing products, such as mobile phones and televisions, into the United States and this District.

19.     On information and belief, TCL and its U.S.-based sales subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of TCL) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, TCL Industries, alone and via at least the activities of its U.S.-based sales subsidiaries (e.g., TTE Technology, Inc. and TCT Mobile (US) Inc.), conducts business in the United States, including importing, distributing, and selling mobile phones and televisions that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

20.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' electronics, such as mobile phones and televisions, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries, TTE Technology Inc. and TCT Mobile (US) Inc., Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

21.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

22.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c). Each Defendant is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

24.     This Court has general and specific personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) Defendants have done and continue to do business in Texas and (ii) Defendants have, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendants have placed, and are continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through

and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

25.     This Court has personal jurisdiction over Defendants, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, e.g., TTE Technology, Inc. and TCT Mobile (US) Inc. Through direction and control of such subsidiaries, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. TTE Technology, Inc. and TCT Mobile (US) Inc. are wholly-owned subsidiaries of TCL. The primary business of TTE Technology, Inc. and TCT Mobile (US) Inc. is the marketing and sale of electronic products in the United States. TCL has a 100% controlling ownership interest in TTE Technology, Inc. and TCT Mobile (US) Inc. and maintains more than half of the voting rights for such subsidiaries as its basis for control. *Id.* Upon information and belief, TCL compensates TTE Technology, Inc. and TCT Mobile (US) Inc. for its sales support services in the United States. As such, TCL has a direct financial interest in its U.S.-based subsidiaries, and vice versa.

26.     Personal jurisdiction is proper because Defendants have committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, *inter alia*, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

27.     Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to SPV.

28.     In addition, Defendants have knowingly induced and continue to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

29.     Personal jurisdiction also exists specifically over each of the Defendants because each, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Best Buy and Walmart) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

30.     Personal jurisdiction also exists specifically over each of the Defendants because Defendants have overlapping executives, interlocking corporate structures, and close relationships as manufacturer, importer, and distributor of the products accused of infringement.

31.     To the extent any foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over such Defendant in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of facts alleged in this Complaint.

32.     In addition, each of the Defendants, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used in Texas, and economically benefits from the retail sale of infringing products in this State. For example, Defendants' products have been sold and are available for sale in this District at Best Buy and Walmart retail stores, and are also available for sale and offered for sale

in this District through online retailers such as Best Buy, Walmart, and Amazon. TCL also advertises its infringing products to consumers in Texas and this District through its agent's websites. *See, e.g.*, https://www.tclusa.com/products/home-theater.

33.   With respect to the '723 patent and '453 patent, the Accused Products comprise LTE-enabled phones that are configured to perform inter-RAT handovers and/or establish a secure tunnel to trusted packet gateways. Such phones include, but are not limited to, the Alcatel 1; Alcatel 5v; Alcatel Idol 2 Mini S; Alcatel Pixi 3 (5.5) LTE; Alcatel Pop 4+; Alcatel Pop Up; Alcatel 1B (2020); Alcatel 7; Alcatel Idol 2 S; Alcatel Pixi 3 (7); Alcatel Pop 4S; Alcatel Pulsemix; Alcatel 1c (2019); Alcatel A3; Alcatel Idol 3 (4.7); Alcatel Pixi 3 (7) 3G; Alcatel Pop 7; Alcatel Shine Lite; Alcatel 1s; Alcatel A3 XL; Alcatel Idol 3 (5.5); Alcatel Pixi 3 (7) LTE; Alcatel Pop 7 LTE; Alcatel Smart Tab 7; Alcatel 1S (2020); Alcatel A5 LED; Alcatel Idol 3C; Alcatel Pixi 3 (8) 3G; Alcatel Pop 7S; Alcatel Smart Tab 7; Alcatel 1T 10; Alcatel A7; Alcatel Idol 4; Alcatel Pixi 4 (3.5); Alcatel Pop 8; Alcatel Tetra; Alcatel 1T 7; Alcatel A7 XL; Alcatel Idol 4s; Alcatel Pixi 4 (4); Alcatel Pop 8S; Alcatel U5; Alcatel 1V; Alcatel Avalon V; Alcatel Idol 5; Alcatel Pixi 4 (5); Alcatel Pop Astro; Alcatel U5 HD; Alcatel 1v (2019); Alcatel Evolve 2; Alcatel Idol 5s; Alcatel Pixi 4 (6); Alcatel Pop C1; Alcatel U50; Alcatel 1V (2020); Alcatel Fierce; Alcatel Idol 5s (USA); Alcatel Pixi 4 (6) 3G; Alcatel Pop C2; Alcatel X1; Alcatel 1x; Alcatel Fierce 2; Alcatel Idol Alpha; Alcatel Pixi 4 (7); Alcatel Pop C3; BlackBerry Aurora; Alcatel 1x (2019); Alcatel Fierce 4; Alcatel Idol Mini; Alcatel Pixi 4 Plus Power; Alcatel Pop C5; BlackBerry DTEK50; Alcatel 3; Alcatel Fierce XL; Alcatel Idol S; Alcatel Pixi 7; Alcatel Pop C7; BlackBerry DTEK60; Alcatel 3 (2019); Alcatel Flash; Alcatel Idol X; Alcatel Pixi 8; Alcatel Pop C9; BlackBerry Evolve; Alcatel 3c; Alcatel Flash (2017); Alcatel Idol X+; Alcatel Pixi First; Alcatel Pop D1; BlackBerry Evolve X; Alcatel 3L; Alcatel Flash 2; Alcatel One Touch Evo 8HD; Alcatel Pop 10; Alcatel Pop D3;

BlackBerry KEY2; Alcatel 3L (2020); Alcatel Flash Plus; Alcatel One Touch Snap; Alcatel Pop 2 (4); Alcatel Pop D5; BlackBerry KEY2 LE; Alcatel 3T 10; Alcatel Flash Plus 2; Alcatel Pixi 2; Alcatel Pop 2 (4.5); Alcatel Pop Fit; BlackBerry Keyone; Alcatel 3T 8; Alcatel Go Play; Alcatel Pixi 3 (10); Alcatel Pop 2 (4.5) Dual SIM; Alcatel Pop Icon; BlackBerry Motion; Alcatel 3v; Alcatel Hero; Alcatel Pixi 3 (3.5); Alcatel Pop 2 (5); Alcatel Pop S3; BlackBerry Priv; Alcatel 3v (2019); Alcatel Hero 2; Alcatel Pixi 3 (4); Alcatel Pop 2 (5) Premium; Alcatel Pop S7; Palm Palm; Alcatel 3x; Alcatel Hero 8; Alcatel Pixi 3 (4.5); Alcatel Pop 3 (5); Alcatel Pop S9; TCL 10 Pro; Alcatel3x; Alcatel Idol 2; Alcatel Pixi 3 (5); Alcatel Pop 3 (5.5); Alcatel Pop Star; TCL 10L; Alcatel3x (2019); Alcatel Idol 2 Mini; Alcatel Pixi 3 (5.5); Alcatel Pop 4; Alcatel Pop Star LTE; TCL 5G; Alcatel 5; and TCL Plex. With respect to the '871 patent, '441 patent, and '144 patent, the Accused Products comprise TCL devices that support Wi-Fi Direct, including, but not limited to, Defendants' mobile phones (e.g., Alcatel 1SE, 4023A, 8067, 8068, 8082, 8084, 3078A, 3078G, 3088T, 3088X, 4017A, 4017S, 4022D, 4022X, 4024D, 4024X, 4034A, 4034D, 4034E, 4034F, 4034G, 4034L, 4034M, 4034N, 4034T, 4034X, 4038D, 4044W, 4047A, 4047F, 4047G, 4047N, 4047X, 4049D, 4049G, 4049X, 4052C, 4052O, 4052R, 4052W, 4052Z, 4053S, 4055A, 4055I, 4055J, 4055Q, 4055U, 4060A, 4060O, 4060S, 4060W, 4087U, 5001A, 5001D, 5001J, 5001T, 5001U, 5002A, 5002B, 5002C, 5002D, 5002E, 5002F, 5002H, 5002I, 5002J, 5002L, 5002M, 5002Q, 5002R, 5002S, 5002T, 5002U, 5002V, 5002X, 5003A, 5003D, 5003G, 5003U, 5004C, 5004R, 5004S, 5005R, 5006A, 5006D, 5006G, 5007A, 5007G, 5007O, 5007S, 5007U, 5007W, 5007Z, 5008A, 5008D, 5008R, 5008T, 5008U, 5008Y, 5009A, 5009D, 5010D, 5010E, 5010G, 5010S, 5010U, 5010X, 5012F, 5012G, 5015A, 5022D, 5022X, 5023E, 5023F, 5024A, 5024D, 5024F, 5024I, 5024J, 5025G, 5026A, 5026D, 5026J, 5027B, 5028A, 5028D, 5028Y, 5029A, 5029D, 5029E, 5029F, 5029Y, 5030D, 5030F, 5030I, 5030J, 5030A, 5030M, 5030U, 5030E,

5032O, 5032W, 5033A, 5033D, 5033E, 5033F, 5033G, 5033J, 5033M, 5033O, 5033Q, 5033S,

5033T, 5033X, 5033Y, 5034D, 5039D, 5039U, 5041C, 5044A, 5044C, 5044D, 5044G, 5044I,

5044O, 5044P, 5044R, 5044S, 5044T, 5044Y, 5045F, 5046D, 5046G, 5046I, 5046J, 5046S,

5046U, 5046Y, 5047D, 5047I, 5047U, 5047Y, 5048A, 5048I, 5048T, 5048U, 5048Y, 5049E,

5049G/5149G, 5049S, 5049W, 5049Z, 5051A, 5051D, 5051J, 5051M, 5051T, 5051X, 5052A,

5052D, 5052Y, 5053A, 5053D, 5053K, 5053Y, 5054O, 5055S, 5055W, 5056A, 5056E, 5056G,

5056N, 5056O, 5057M, 5057X, 5058A, 5058I, 5058J, 5058T, 5058Y, 5059A, 5059D, 5059I,

5059J, 5059R, 5059S, 5059T, 5059X, 5059Y, 5059Z, 5060A, 5060D, 5061A, 5061K, 5061U,

5062W, 5062Z, 5065A, 5065D, 5065N, 5065T, 5065W, 5065X, 5080A, 5080F, 5080Q, 5080U,

5080X, 5085A, 5085B, 5085C, 5085D, 5085G, 5085I, 5085J, 5085N, 5085O, 5085Q, 5085Y,

5086A, 5086D, 5086Y, 5090A, 5090I, 5090Y, 5095B, 5095I, 5095K, 5095Y, 5099A, 5099I,

5099U, 5099Y, 5101A, 5101J, 5102K, 5102B, 5102M, 5102P, 5107G, 5124J, 5128A, 5129A,

5130I, 5130J, 5133A, 5146G, 5148A, 5148I, 5152D, 5153A, 5153K, 5161A, 5186A, 5186D,

5199I, 6025A, 6025D, 6025H, 6037B, 6055A, 6055B, 6055D, 6055K, 6055P, 6055U, 6055Z,

6058A, 6058D, 6058X, 6060S, 6060X, 6062W, 6125A, 6125D, 6125F, 7053D, 7053E, 7053J,

7071A, 7071D, 9007A, 9007X, 9009A, 9009G, 9026S, 9048S, A3 PLUS, A3 XL, A3A XL 4G,

A405DL, A406DL, A450TL, A462C, A466BG, A466T, A501DL, A502DL, A503DL, A507DL,

A508DL, A570BL, A572BG, A573VC, A574BL, A576BL, A576CC, A576RW, A577VL,

A600DL, A621BL, A621BL-V, A621R, ALCATEL ONETOUCH PIXI 3 (4.5), ALCATEL PIXI

4 (5), alto 4.5-TMO, BBB100-1, BBB100-2, BBB100-3, BBB100-6, BBD100-1, BBE100-1,

BBE100-2, BBE100-4, BBE100-5, BBF100-1, BBF100-2, BBF100-6, BBF100-8/BBF100-9,

BlackBerry DTEK 60™, Cross2 APAC, DTEK 50™, FL02, FL03, GFLIP2, GSM Quad Band &

UMTS Dual Band Entry 3G mobile phone, GSM/WCDMA/TDD/FDD Smart Phone, IDOL3-5.5

Cricket, IDOL3-5.5 EMEA, IDOL3-5.5 EMEA- 6045Y, IDOL3-5.5 japan, IDOL3-5.5 LATAM, IDOL3-5.5 SKT, IDOL3-5.5 US, IDOL4 PRO, IDOL4 PRO WP EU, IDOL4 S, Idol4 S VF, Irvine, LTE / UMTS / GSM Band Mobile Phone, M823F, ONETOUCH PIXI 3(7), ONETOUCH PIXI 3(8), Pixi 3-5 3G, PIXI 4 (3.5) 3G, PIXI 4 6" 4G Android, Pixi3-4.5 4G SPR, Pixi3-5 3G VF, Pixi3-5.5 4G, Pixi3-5.5 4G EVDO, Pixi3-5.5 4G GL, Pixi3-5.5 4G TF, Pixi3-5.5 4G TMO, Pixi3-8 4G TLS, Pixi4-4.5 TF VZW, Pixi5-6 4G, POP4-5.5C, POP4-6 4G, REVVL 2 5052W, REVVL 2 PLUS 6062Z, SIMBA6 CRICKET, T550D, T671E, T671H, T700A, T700X, T766A, T766H, T766J, T766U, T770B, T770H, T780H, T782H, T782P, T790B, T790H, T790S, T790W, T790Y, T790Z, T799B, T799H, Tablet PC, TCL 562, U3, UMTS/GSM smart phone, VF-795, VFD 100, VFD 300, VFD 301, VFD 527, VFD 528, VFD 529, VFD 610, VFD 620, VFD 700, VFD 720, VFD 730, VFD310, VFD311, VFD500, VFD501, VFD502, Vodafone Tab speed 6, Wind Tab 10), TVs (e.g., Model Number 40L5400, U55S6806S, 32FB4406), tablets (e.g., ALCATEL ONETOUCH POP（10）, TINT, Vodafone Tab Prime 6, ALCATEL ONETOUCH PIXI 3 (7), ALCATEL ONETOUCH PIXI 2 (7), Puls, ONETOUCH PIXI 3 (10), 9010X, VF-1296, ONETOUCH PIXI 3 (8), PIXI 4 6" 3G Android, 9015W, 9003A, VFD 1100, 9003X, 9030G, 8085, 8063, VFD 1400, 9030Q, 8062, 5098O, 9015Q, 9015J, 9025Q, 9015B, C15BA, 9015U, 9203A, IC01, 9024W, 9024O, 8050J, 8090, 9027X, 9027T, 9027Q, 9027W, 9027F, 9027G, 8088Q, 8088X, 8088L, 9029W, 9029G, 9029Z, 8052, 8051, 8076, 9013T, 9013X, 9013A, 9032X, 9032T, 9032W, 9032Z, 8092, 8094M, 8091, 8094X, 8094T, 9060X, 8095), and home entertainment equipment (e.g., TWM-A8516-MT6630T), as well as, their components, and processes related to the same. On information and belief, TCL controls or otherwise directs and authorizes all activities of its U.S.-based sales subsidiaries, including TTE Technology Inc. and TCT Mobile (US) Inc. Such directed and authorized activities include, the U.S. Subsidiaries'

using, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents. The Defendants' U.S.-based sales subsidiaries (e.g., TTE Technology Inc. and TCT Mobile (US) Inc.) are authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, TCL researches, designs, develops, and manufactures mobile phones and then directs its U.S.-based sales subsidiaries to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Furthermore, Defendants' U.S.-based sales subsidiaries also administer, on behalf of Defendants, requests for service under and any disputes arising from Defendants' limited warranty of the Accused Products sold in the U.S., including in Texas and this judicial district. *See, e.g.*, https://us.alcatelmobile.com/warranty/. Thus, Defendants' U.S.-based sales subsidiaries conduct infringing activities on behalf of Defendants.

34. On information and belief, Defendants' U.S.-based sales subsidiaries corporate presence in the United States gives TCL substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state. Defendants' U.S.-based sales subsidiaries are authorized to import, distribute, sell, and offer for sale Defendants' products, including mobile phones incorporating infringing devices and processes, on behalf of Defendants. For example, Defendants' U.S.-based sales subsidiaries operate within Defendants' global network of sales subsidiaries in North and South America, Europe, Asia, Africa, and the Middle East. In the U.S., including within the Eastern District of Texas,

Defendants' mobile phones and televisions, which incorporate infringing devices and processes, are imported, distributed, offered for sale, and sold.

35.    Via Defendants' alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in retail stores, both brick and mortar and online, in Texas including within this judicial district. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)). For example, Defendants' phones are sold to end users by the U.S.-based subsidiaries, distributors, and customers, including, but not limited to, TTE Technology Inc. and TCT Mobile (US) Inc., online and at retail stores located throughout the Eastern District of Texas.

36.    On information and belief, TCL has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as TTE Technology Inc. and TCT Mobile (US) Inc., and customers such as AT&T and Verizon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. For example, in 2019 TCL reported 10,973 billion HK$ (about 13.42 billion USD) in North American sales of its television products. *See 2019 Annual Report*, TCL ELECTRONICS (March 2020), at p.

189, *available at* https://doc.irasia.com/listco/hk/tclelectronics/annual/2019/ar2019.pdf.  As a result, TCL has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

37.     In the alternative, the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendants is consistent with the U.S. Constitution.

38.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

## THE ASSERTED PATENTS AND TECHNOLOGY

39.     On information and belief, a significant portion of the revenue of TCL is derived from the manufacture and sale of mobile phones. Defendants' mobile phones are utilized in wireless networks. These wireless networks utilize a variety of radio access technologies ("RAT"), including, but not limited to, UTRAN, GERAN, E-UTRAN, WLAN, 3GPP access systems, and non-3GPP access systems. TCL's mobile phones are configured to support these RATs to hand over communication connections between different RAT systems to provide seamless communication for mobile phone users.

40.     Defendants' mobile devices comply with various mobile standards, including 3GPP TS 23.402 version 12.10.0 and 3GPP TS 33.402 version 14.2.0. As a result of complying with such standards, Defendants' mobile phones establish a secure tunnel to a trusted packet data gateway upon the UE initially attaching to or performing a handover to a target access network when the UE establishes an IPsec tunnel with an evolved packet data gateway (ePDG) in a target access network. ePDGs are responsible for interworking between the evolved packet core (EPC) and untrusted non-3GPP networks that require secure access, such as a Wi-Fi, LTE metro, and femtocell access networks.



*See LTE Security – How Good Is It?*, NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY, *available via* https://csrc.nist.gov/CSRC/media/Presentations/LTE-Security-How-Good-is-it/images-media/day2_research_200-250.pdf, p. 14.

41.     An ePDG integrates multiple core network functions in a single node and provides superior performance and backhaul security through IPSec tunnels, tunnel set-up rates, throughput, and deep packet inspection (DPI).

42.     On information and belief, a significant portion of the revenue of TCL is derived from the manufacture and sale of TCL's mobile phones, tablets, TVs, and home theater equipment.

43.     The Accused Products support Wi-Fi Direct. For example, the TCL Alcatel One Touch mobile phone is certified with the Wi-Fi Alliance, sold in the United States, and supports Wi-Fi Direct.

44.      Using Wi-Fi Direct connectivity, the Alcatel One Touch is configured to act as a Wi-Fi Direct peer such that one peer is as a "communication terminal" and another Wi-Fi Direct peer acts as a "base station," as indicated below.



*See Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7*, WI-FI ALLIANCE, *available via* https://www.wi-fi.org/, pp. 14-17.

45.     The Wi-Fi Direct peer (e.g., an Alcatel One Touch) has wireless communication circuitry (e.g., a Wi-Fi module) that communicates with another Wi-Fi Direct peer.



46.     The Wi-Fi Direct peer (e.g., an Alcatel One Touch) establishes a connection with another Wi-Fi Direct peer device using a connection that does not require authentication or a connection that does require authentication.



47.     The Wi-Fi Direct peer (e.g., an Alcatel One Touch) has control circuitry (e.g., a Wi-Fi module processor) that controls the wireless communication circuitry.



Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168]

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,467,723)

48.     Plaintiff incorporates paragraphs 1 through 47 herein by reference.

49.     SPV is the assignee of the '723 patent, entitled "Base Station Apparatus, Mobile Apparatus, and Communication Method," with ownership of all substantial rights in the '723 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

50.     The '723 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '723 patent issued from U.S. Patent Application No. 13/585,621.

51.     TCL has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '723 patent in this judicial district and elsewhere in Texas and the United States.

52.     On information and belief, TCL designs, develops, manufactures, assembles and markets mobile phones and devices configured to connect to wireless cellular networks. *See TCL 10 Pro Specifications*, https://www.tcl.com/us/en/products/mobile/tcl-10-pro/t799b (last visited Dec. 27, 2020) (stating "Compatible with GSM carriers, including AT&T and T-Mobile. This device is also certified for use on Verizon's LTE network."); *see also TCL 10 5G UW Specifications*, TCL, https://www.tcl.com/us/en/products/mobile/tcl-10-5g-uw/t790s; *TCL 10L Specifications*, TCL, https://www.tcl.com/us/en/products/mobile/tcl-10-l/t770b; *TCL Signa*, TCL, https://www.tcl.com/us/en/products/mobile/5004S.

53.     TCL directly infringes the '723 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '723 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TCL sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '723 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TCL directly infringes the '723 patent through its direct involvement in the activities of its subsidiaries,

including TCT Mobile (US) Inc., including by selling and offering for sale the Accused Products directly to TCT Mobile (US) Inc. and importing the Accused Products into the United States for TCT Mobile (US) Inc. On information and belief, TCT Mobile (US) Inc. conducts activities that constitutes direct infringement of the '723 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, TCL offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TCL is vicariously liable for this infringing conduct of TCT Mobile (US) Inc. (under both the alter ego and agency theories) because, as an example and on information and belief, TCL and TCT Mobile (US) Inc. are essentially the same company, and TCL has the right and ability to control TCT Mobile (US) Inc.'s infringing acts and receives a direct financial benefit from TCT Mobile (US) Inc.'s infringement.

54.     For example, TCL infringes claim 9 of the '723 patent via the Accused Products such as TCL 10 Pro, TCL 10 5G UW, TCL 10L, and TCL Signa among other TCL phones sold during the statutory damages period that perform inter-RAT handovers and are configured to connect wireless cellular networks.

55.     The Accused Products implement the "communication method performed by a mobile station apparatus that belongs to a first area, which is covered by a base station apparatus employing a first Radio Access Technology (RAT), the first area including part or entirety of a second area which is covered by a host station employing a second RAT different from the first RAT" of claim 9. Each of the Accused Products is a mobile station that performs inter-RAT handovers, where the mobile station's radio connection is switched from a first base station (e.g., LTE eNB) that employs a first RAT (e.g., LTE) to a second base station (e.g., RNC/NodeB) that

employs a second (and different) RAT (e.g., GERAN/UTRAN). RAT handover scenarios include handovers between E-UTRAN (LTE) and UTRAN or GERAN (both 3G).

56.     The Accused Products transmit, to the base station apparatus, notification information while the mobile station apparatus is using the first RAT when the mobile station apparatus detects that the mobile station apparatus is located in the second area while using the first RAT. For example, the Accused Products include a transmitter (e.g., an RF transceiver coupled to a RF front end and an antenna) to transmit notification information, e.g., measurement information, to the E-UTRAN eNB (i.e., the base station) which is using a first RAT (e.g., LTE). Such a transmission occurs when the mobile station detects that it is located in a second area (i.e., within a 3G radio cell while still connected to the LTE base station).

57.     The Accused Products perform a handover based on traffic control by the base station apparatus using the notification information. For example, the Accused Products have a controller that is responsive to a handover message received from the LTE eNB, based on the notification information, i.e., the measurement information.

58.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

59.     At a minimum, TCL has known of the '723 patent at least as early as the filing date of the complaint. In addition, TCL has known about the '723 patent since at least September 11, 2020, when TCL was given access to a data room providing notice of its infringement.

60.     On information and belief, since at least the above-mentioned date when TCL was on notice of its infringement, TCL has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '723

patent to directly infringe one or more claims of the '723 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, TCL does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '723 patent. TCL intends to cause, and have taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

61.     On information and belief, despite having knowledge of the '723 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '723 patent, TCL has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TCL's infringing activities relative to the '723 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

62.     SPV has been damaged as a result of TCL's infringing conduct described in this Count. TCL is, thus, liable to SPV in an amount that adequately compensates SPV for TCL's

infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 8,792,453)

63.     Plaintiff incorporates paragraphs 1 through 62 herein by reference.

64.     SPV is the assignee of the '453 patent, entitled "Secure Tunnel Establishment Upon Attachment or Handover to an Access Network," with ownership of all substantial rights in the '453 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

65.     The '453 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '453 patent issued from U.S. Patent Application No. 13/126,924.

66.     TCL has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '453 patent in this judicial district and elsewhere in Texas and the United States.

67.     On information and belief, TCL designs, develops, manufactures, assembles and markets mobile phones and devices configured to connect to wireless cellular networks. *See TCL 10 Pro Specifications*, https://www.tcl.com/us/en/products/mobile/tcl-10-pro/t799b (last visited Dec. 27, 2020) (stating "Compatible with GSM carriers, including AT&T and T-Mobile. This device is also certified for use on Verizon's LTE network."); *see also TCL 10 5G UW Specifications*, TCL, https://www.tcl.com/us/en/products/mobile/tcl-10-5g-uw/t790s; *TCL 10L Specifications*, TCL, https://www.tcl.com/us/en/products/mobile/tcl-10-l/t770b; *TCL Signa*, TCL, https://www.tcl.com/us/en/products/mobile/5004S.

68.     TCL directly infringes the '453 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing same that incorporate the fundamental technologies covered by the '453 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TCL sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '453 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TCL directly infringes the '453 patent through its direct involvement in the activities of its subsidiaries, including TCT Mobile (US) Inc., including by selling and offering for sale the Accused Products directly to TCT Mobile (US) Inc. and importing the Accused Products into the United States for TCT Mobile (US) Inc. On information and belief, TCT Mobile (US) Inc. conducts activities that constitutes direct infringement of the '453 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, TCL offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TCL is vicariously liable for this infringing conduct of TCT Mobile (US) Inc. (under both the alter ego and agency theories) because, as an example and on information and belief, TCL and TCT Mobile (US) Inc. are essentially the same company, and TCL has the right and ability to control TCT Mobile (US)

Inc.'s infringing acts and receives a direct financial benefit from TCT Mobile (US) Inc.'s infringement

69.     For example, TCL infringes claim 1 of the '453 patent via the Accused Products such as TCL 10 Pro, TCL 10 5G UW, TCL 10L, and TCL Signa, among other TCL phones sold during the statutory damages period, which are configured to connect to wireless cellular network.

70.     The Accused Products implement the "method for establishing a secure tunnel to a trusted packet data gateway upon a mobile node initially attaching to or performing a handover to a target access network" of claim 1. Each of the Accused Products are mobile phones that establish a secure tunnel to a trusted packet data gateway upon the mobile phone initially attaching to or performing a handover to a target access network. This occurs when the mobile phone establishes an IPsec tunnel with an evolved packet data gateway (ePDG) in a target access network.

71.     For example, the Accused Products determine from a reachability list maintained in the mobile node at least one trusted packet data gateway that is reachable through the target access network, wherein the reachability list lists data sets indicating data paths and the reachability status of respective known trusted packet data gateways for each respective data path. For example, the Accused Products are User Equipment ("UE"). Each Accused Product has a pre-configured list (i.e., reachability list) with non-3GPP access technologies, access networks, or serving network operators that allow for trusted non-3GPP IP access. The mobile phone receives an indication of whether the non-3GPP IP access is trusted or not. The reachability list lists data path indication, including and access point name and/or an access point IP address.

72.     The Accused Products establish a secure tunnel to the trusted packet data gateway determined from the reachability list maintained in the mobile node, the secure tunnel is established prior to the attachment to the target access network. For example, the 3GPP mobile

phone establishes a secure IPsec tunnel to the trusted data packet gateway (ePDG) determined from the reachability list maintained in the mobile phone prior to attaching to the target access network.

73.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

74.     At a minimum, TCL has known of the '453 patent at least as early as the filing date of the complaint. In addition, TCL has known about the '453 patent since at least December 10, 2020, when TCL was given access to a data room providing notice of its infringement.

75.     On information and belief, since at least the above-mentioned date when TCL was on notice of its infringement, TCL has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '453 patent to directly infringe one or more claims of the '453 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, TCL does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '453 patent. TCL intends to cause, and have taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products,

and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

76.     On information and belief, despite having knowledge of the '453 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '453 patent, TCL has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TCL's infringing activities relative to the '453 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

77.     SPV has been damaged as a result of TCL's infringing conduct described in this Count. TCL is, thus, liable to SPV in an amount that adequately compensates SPV for TCL's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III
### (INFRINGEMENT OF U.S. PATENT NO. 8,902,871)

78.     Plaintiff incorporates paragraphs 1 through 77 herein by reference.

79.     SPV is the assignee of the '871 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of all substantial rights in the '871 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

80.     The '871 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '871 patent issued from U.S. Patent Application No. 13/607,931.

81.     TCL has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '871 patent in this judicial district and elsewhere in Texas and the United States.

82.     On information and belief, TCL designs, develops, manufactures, assembles and markets mobile phones, tablets, TVs, and home theater equipment. Nearly 800 devices are certified products supporting Wi-Fi Direct through the Wi-Fi Alliance. One such product is the Alcatel One Touch (a mobile phone).

83.     TCL directly infringes the '871 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '871 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TCL sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '871 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TCL directly infringes the '871 patent through its direct involvement in the activities of its subsidiaries, including TTE Technology, Inc. and TCT Mobile (US) Inc., including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '871 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling,

and/or importing those Accused Products. For example, and on information and belief, TCL offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TCL is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., TTE Technology, Inc. and TCT Mobile (US) Inc., (under both the alter ego and agency theories) because, as an example and on information and belief, TCL and TTE Technology, Inc. and TCT Mobile (US) Inc. are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., TTE Technology, Inc. and TCT Mobile (US) Inc.

84.     For example, TCL infringes claim 16 of the '871 patent via the Accused Products. The Accused Products perform the "method implemented by a wireless base station connected to a wireless communication terminal" of claim 16. For example, the Accused Products connect to Wi-Fi and are certified products supporting Wi-Fi Direct through the Wi-Fi Alliance. In Wi-Fi Direct, each Accused Product is enabled to function as a wireless base station that is configured to connect to a wireless communication terminal (e.g., a second device with Wi-Fi Direct capability).

85.     The Accused Products perform a wireless communication controlling step of controlling communication with the wireless communication terminal. For example, a Wi-Fi Direct peer device (e.g., an Accused Product functioning as a base station) has a wireless communication section (e.g., the Wi-Fi module) that communicates with another Wi-Fi Direct peer device (i.e., a communication terminal) using a predetermined communication method (e.g., Wi-Fi Direct protocols).

86.     In the Accused Products, the wireless communication controlling step establishes a connection with the wireless communication terminal by using (i) a first connection which does

not require an authentication procedure for connection with the wireless communication terminal, or (ii) a second connection which requires the authentication procedure for connection with the wireless communication terminal. For example, the Accused Products, functioning as a base station, establish a connection with the communication terminal using a connection that does not require authentication or a connection that does require authentication.

87.      In the Accused Products, the wireless communication controlling step further comprises: a first wireless communication controlling step of controlling communication with the wireless communication terminal in accordance with a first wireless communication method. For example, a Wi-Fi Direct peer device (i.e. the Accused Product/base station) has a first wireless communication section (e.g., IEEE 802.11 portion of Wi-Fi module) that communicates with another Wi-Fi Direct peer device (i.e., the communication terminal) using a first method (e.g., IEEE 802.11).

88.      In the Accused Products, the wireless communication controlling step further comprises a second wireless communication controlling step of controlling communication with the wireless communication terminal in accordance with a second wireless communication method. For example, the Accused Products have a second wireless communication section (e.g., a P2P portion of Wi-Fi module) that communicates with another Wi-Fi Direct peer device using a second wireless communication method (e.g., P2P protocol described in the "Wi-Fi Peer-to-Peer (P2P) Technical Specification").

89.      In the Accused Products, the second wireless communication controlling step performs transmitting, to the wireless communication terminal, profile information that is necessary for the first wireless communication step. For example, the Accused Products transmit to another Wi-Fi Direct peer device (i.e., the communication terminal), via the second method

34

(e.g., P2P), profile information (e.g., operating channel attributes) necessary for the devices to communicate via the first method (e.g., IEEE 802.11).

90.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

91.     At a minimum, TCL has known of the '871 patent at least as early as the filing date of the complaint. In addition, TCL has known about the '871 patent since at least September 11, 2020, when TCL was given access to a data room providing notice of its infringement.

92.     On information and belief, since at least the above-mentioned date when TCL was on notice of its infringement, TCL has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '871 patent to directly infringe one or more claims of the '871 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, TCL does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '871 patent. TCL intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

93.     On information and belief, despite having knowledge of the '871 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '871 patent, TCL has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TCL's infringing activities relative to the '871 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

94.     SPV has been damaged as a result of TCL's infringing conduct described in this Count. TCL is, thus, liable to SPV in an amount that adequately compensates SPV for TCL's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV
### (INFRINGEMENT OF U.S. PATENT NO. 9,357,441)

95.     Plaintiff incorporates paragraphs 1 through 94 herein by reference.

96.     SPV is the assignee of the '441 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of all substantial rights in the '441 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

97.     The '441 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '441 patent issued from U.S. Patent Application No. 14/747,164.

98.     TCL has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '441 patent in this judicial district and elsewhere in Texas and the United States.

99.     On information and belief, TCL designs, develops, manufactures, assembles and markets mobile phones, tablets, TVs, and home theater equipment. Nearly 800 devices are certified products supporting Wi-Fi Direct through the Wi-Fi Alliance. One such product is the Alcatel One Touch (a mobile phone).

100.     TCL directly infringes the '441 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '441 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TCL sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '441 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TCL directly infringes the '441 patent through its direct involvement in the activities of its subsidiaries, including TTE Technology, Inc. and TCT Mobile (US) Inc., including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '441 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling,

and/or importing those Accused Products. For example, and on information and belief, TCL offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TCL is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., TTE Technology, Inc. and TCT Mobile (US) Inc., (under both the alter ego and agency theories) because, as an example and on information and belief, TCL and TTE Technology, Inc. and TCT Mobile (US) Inc. are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., TTE Technology, Inc. and TCT Mobile (US) Inc.

101.    For example, TCL infringes claim 1 of the '441 patent via the Accused Products. The Accused Products comprise the "wireless communication terminal" of claim 1. For example, the Accused Products connect to Wi-Fi and are certified products supporting Wi-Fi Direct through the Wi-Fi Alliance. In Wi-Fi Direct, each Accused Product is enabled to function as a communication terminal that communicates with another device (e.g., another device with Wi-Fi Direct capability) that is enabled to function as a base station.

102.    The Accused Products comprise wireless communication circuitry operative to communicate with a wireless base station by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless base station, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless base station. For example, in the Accused Products (i.e., a Wi-Fi Direct peer), the communication terminal has wireless communication circuitry (e.g., Wi-Fi module) that communicates with another Wi-Fi Direct peer (i.e., the base station). The communication terminal

establishes a connection with the base station using a connection that does not require authentication or a connection that does require authentication.

103.    The Accused Products comprise control circuitry operative to receive, by using the wireless communication circuitry, communication channel information from the wireless base station with a first communication method prior to the authentication connection starting with a second communication method, the communication channel information being necessary for the second communication method to select a communication channel for communicating with the wireless base station. In the Accused Products, the communication terminal has control circuitry (e.g., Wi-Fi module processor) that controls the wireless communication circuitry. The communication terminal (functioning as a Wi-Fi Direct peer device) receives from the base station (e.g., another Wi-Fi Direct peer device), via the first method (e.g., P2P), communication channel information (e.g., channel list and operating channel attributes) necessary for the devices to communicate via the second method (e.g., IEEE 802.11). The control circuity receives the communication channel information prior to the authentication connection starting with a second communication method.

104.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's allegations that each limitation of claim 1 is met.

105.    At a minimum, TCL has known of the '441 patent at least as early as the filing date of the complaint. In addition, TCL has known about the '441 patent since at least September 11, 2020, when TCL was given access to a data room providing notice of its infringement.

106.    On information and belief, since at least the above-mentioned date when TCL was on notice of its infringement, TCL has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused

39

Products that include or are made using all of the limitations of one or more claims of the '441 patent to directly infringe one or more claims of the '441 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, TCL does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '441 patent. TCL intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

107.    On information and belief, despite having knowledge of the '441 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '441 patent, TCL has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TCL's infringing activities relative to the '441 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

108.    SPV has been damaged as a result of TCL's infringing conduct described in this Count. TCL is, thus, liable to SPV in an amount that adequately compensates SPV for TCL's

infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V

### (INFRINGEMENT OF U.S. PATENT NO. 10,039,144)

109.   Plaintiff incorporates paragraphs 1 through 108 herein by reference.

110.   SPV is the assignee of the '144 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System" with ownership of all substantial rights in the '144 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

111.   The '144 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '144 patent issued from U.S. Patent Application No. 15/142,258.

112.   TCL has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '144 patent in this judicial district and elsewhere in Texas and the United States.

113.   On information and belief, TCL designs, develops, manufactures, assembles and markets mobile phones, tablets, TVs, and home theater equipment. Nearly 800 devices are certified products supporting Wi-Fi Direct through the Wi-Fi Alliance. One such product is the Alcatel One Touch (a mobile phone).

114.   TCL directly infringes the '144 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '144 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, TCL sells and

makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '144 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, TCL directly infringes the '144 patent through its direct involvement in the activities of its subsidiaries, including TTE Technology, Inc. and TCT Mobile (US) Inc., including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '144 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, TCL offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, TCL is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., TTE Technology, Inc. and TCT Mobile (US) Inc., (under both the alter ego and agency theories) because, as an example and on information and belief, TCL and TTE Technology, Inc. and TCT Mobile (US) Inc. are essentially the same company, and TCL has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., TTE Technology, Inc. and TCT Mobile (US) Inc.

115.    For example, TCL infringes claim 1 of the '144 patent via the Accused Products. The Accused Products comprise the "wireless communication device" of claim 1. For example, the Accused Products connect to Wi-Fi and are certified products supporting Wi-Fi Direct through

the Wi-Fi Alliance. In Wi-Fi Direct, each Accused Product is enabled to function as a communication terminal that communicates with another device (e.g., another device with Wi-Fi Direct capability) that is enabled to function as a wireless station.

116.    The Accused Products comprise wireless communication circuitry operative to communicate with a wireless station by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless station, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless station. For example, the Accused Products (functioning as a Wi-Fi Direct peer device) establish a connection with another Wi-Fi Direct peer device (i.e., a wireless station) using a connection that does not require authentication or a connection that does require authentication.

117.    The Accused Products comprise control circuitry operative to receive, by using the wireless communication circuitry, profile information from the wireless station with a first communication method prior to the authentication connection starting with a second communication method, the profile information being necessary for the second communication method to communicate with the wireless station. For example, the Accused Products (i.e., Wi-Fi Direct peer devices) receive from another Wi-Fi Direct peer device (i.e., the wireless station), via the first communication method (e.g., P2P), profile information (e.g., channel list and operating channel attributes) necessary for the devices to communicate via the second communication method (e.g., IEEE 802.11).

118.    The Accused Products comprise the control circuitry that is operative to control the wireless communication circuitry to receive a content with the second communication method, and the control circuitry further controls the wireless communication circuitry to receive information that is related to the content with the first communication method. For example, the

43

Accused Products receive content (e.g., WSC Exchange data, such as a Device Password) from another Wi-Fi Direct peer device (i.e., the wireless station), via the second communication method (e.g., IEEE 802.11). And the Accused Products receive information that is related to the content (e.g., WSC IE data, such as a Device Password ID) from the wireless station, via the first communication method (e.g., P2P).

119.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

120.    At a minimum, TCL has known of the '144 patent at least as early as the filing date of the complaint. In addition, TCL has known about the '144 patent since at least September 11, 2020, when TCL was given access to a data room providing notice of its infringement.

121.    On information and belief, since at least the above-mentioned date when TCL was on notice of its infringement, TCL has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '144 patent to directly infringe one or more claims of the '144 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, TCL does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '144 patent. TCL intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to

44

purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

122.    On information and belief, despite having knowledge of the '144 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '144 patent, TCL has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. TCL's infringing activities relative to the '144 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

123.    SPV has been damaged as a result of TCL's infringing conduct described in this Count. TCL is, thus, liable to SPV in an amount that adequately compensates SPV for TCL's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

124.    Plaintiff SPV is entitled to recover from TCL the damages sustained by Plaintiff as a result of TCL's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

125.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case

within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

126.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

127.    Plaintiff respectfully requests that the Court find in its favor and against TCL, and that the Court grant Plaintiff the following relief:

1. A judgment that TCL has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by TCL;

3. A judgment and order requiring TCL to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4. A judgment and order requiring TCL to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5. A judgment and order finding this to be an exceptional case and requiring TCL to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6. Such other and further relief as the Court deems just and equitable.

Dated: January 13, 2021                  Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
T. William Kennedy Jr.
Texas Bar No. 24055771
Jonathan H. Rastegar
Texas Bar No. 24064043
Jerry D. Tice, II
Texas Bar No. 24093263

**Bragalone Conroy PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
pconroy@bcpc-law.com
bkennedy@bcpc-law.com
jrastegar@bcpc-law.com
jtice@bcpc-law.com

**Attorneys for Plaintiff**
**Sovereign Peak Ventures, LLC**